**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| EARL HOLMES, III, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 08-CV-199-TCK-PJC |
| ) | |
| SHARON P. GWIN, c/o Tulsa Police ) | |
| Department as a Tulsa Police Officer, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

This is a 42 U.S.C. § 1983 civil rights action commenced by Plaintiff, a state prisoner appearing *pro se* and proceeding *in forma pauperis*. Defendant filed a Special Report (Dkt. # 17) and a motion for summary judgment (Dkt. # 18).[1] Plaintiff filed a response (Dkt. # 29) to the motion for summary judgment. For the reasons discussed below, the Court finds the motion for summary judgment should be granted.

### *BACKGROUND*

In his civil rights complaint (Dkt. # 1), Plaintiff identifies one (1) defendant: Sharon P. Gwin, a police officer for the City of Tulsa. He asserts one (1) claim: that his arrest was accompanied by an excessive use of force. In his request for relief, Plaintiff asks for "actual, monetary, and punitive damages, including, but not limited to medical expenses and damages arising from loss of employment." See Dkt. # 1. Plaintiff alleges the following relevant facts:

> On or about February 6, 2008, I was the subject of an arrest by the Tulsa Police Department. During the course of said arrest, I surrendered to the arresting officers,

---

[1] Both the Special Report (Dkt. # 17) and the motion for summary judgment (Dkt. # 18) contain personal identifiers and, for that reason, were filed under seal. Defendant filed a corrected motion for summary judgment (Dkt. # 20) and a corrected Special Report (Dkt. # 19) to redact personal identifiers.

>both physically and verbally. At the time of my surrender, I was seated, in a crouched position, inside a stationary wooden box barely large enough to contain my physical person. At the time the officers discovered me, I calmly raised my arms and announced my intent to surrender. Subsequent to this surrender, Officer Sharon P. Gwin of the Tulsa Police Department allowed a police dog to attack my physical person, during the entire attack, the officer maintained complete control of the dog and not once let go of the restraint. I remained in my seated position and reiterated my agreed surrender. The canine continued its attack on me, while the arresting officers witnessed said attack and allowed it to continue.

(Dkt. # 1).

In response to the complaint, Officer Gwin filed a corrected motion for summary judgment (Dkt. # 20), asserting that she is entitled to qualified immunity. Defendant also filed a corrected Special Report (Dkt. # 19). Plaintiff filed a response (Dkt. # 29) to Defendant's motion for summary judgment.

## *UNCONTROVERTED FACTS*

The record before the Court demonstrates that on February 6, 2008, a man, later identified as Plaintiff Earl Holmes, ran on foot from the scene of a crime.[2] See Dkt. # 20, Ex. 3. Tulsa police officers set up a perimeter around an apartment complex and called for a K-9 unit. Id. Officer Gwin arrived with her K-9 partner. Id., Ex. 4. The K-9 led Officer Gwin to a wooden box behind an apartment complex. Id. Plaintiff was hiding inside the box. Id. The K-9 placed a "bite and hold grip" on Plaintiff's left arm. Id. Officer Gwin eventually ordered the K-9 to let go of Plaintiff's arm. Id. He was placed under arrest and transported to booking. See Dkt. # 20, Ex. 3. At the jail, Plaintiff received medical attention for minor injuries to his arm resulting from the dog's bite.[3] See

---

[2] Plaintiff had crashed a stolen car into a parked car. See Dkt. # 20, Ex. 3.

[3] Plaintiff's jail records indicate that by February 28, 2008, his injuries were "resolved." See Dkt. # 19, Ex. 8.

Dkt. # 19, Ex. 8. Based on the events of February 6, 2008, Plaintiff was charged in Tulsa County District Court, Case No. CF-2008-650, with Possession of Stolen Vehicle (Count 1), Leaving Scene of Accident Involving Property Damage (Count 2), and Driving Without a Driver's License (Count 3). See Dkt. # 19, Ex. 4. On October 6, 2008, Plaintiff entered pleas of guilty and was convicted of each count. Id.

## *DISCUSSION*

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. Jiron v. City of Lakewood, 392 F.3d 410, 414 (10th Cir. 2004); Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990) (citing Gray v. Phillips Petroleum Co., 858 F.2d 610, 613 (10th Cir. 1988). "However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Applied Genetics, 912 F.2d at 1241 (citing Celotex Corp v. Catrett, 477 U.S. 317, 324 (1986)). A dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are "facts which might affect the outcome of the suit under the governing law." Id. Although the court cannot resolve material factual disputes at summary judgment based on conflicting affidavits, Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991), the mere existence of an alleged factual dispute does not defeat an

otherwise properly supported motion for summary judgment. Anderson, 477 U.S. at 247-48. Only material factual disputes preclude summary judgment; immaterial disputes are irrelevant. Hall, 935 F.2d at 1111. Similarly, affidavits must be based on personal knowledge and set forth facts that would be admissible in evidence. Id. Conclusory or self-serving affidavits are not sufficient. Id. The trial judge shall grant summary judgment if the evidence, viewed in the light most favorable to the non-movant, fails to show that there exists a genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Anderson, 477 U.S. at 250.

Where a *pro se* plaintiff is a prisoner, a court authorized "Martinez Report" (Special Report) prepared by prison officials may be necessary to aid the court in determining possible legal bases for relief for unartfully drawn complaints. See Hall, 935 F.2d at 1109. On summary judgment, the court may treat the Martinez Report as an affidavit, but may not accept the factual findings of the report if the plaintiff has presented conflicting evidence. Id. at 1111. This process is designed to aid the court in fleshing out possible legal bases of relief from unartfully drawn *pro se* prisoner complaints, not to resolve material factual disputes. The plaintiff's complaint may also be treated as an affidavit if it is sworn under penalty of perjury and states facts based on personal knowledge. Id. The court must also construe plaintiff's *pro se* pleadings liberally for purposes of summary judgment. Haines v. Kerner, 404 U.S. 519, 520 (1972).

**B. Qualified immunity**

As indicated above, Officer Gwin asserts a defense of qualified immunity. "This defense shields government officials performing discretionary functions from liability 'if their conduct does not violate clearly established rights of which a reasonable government official would have known.'" Graves v. Thomas, 450 F.3d 1215,1218 (10th Cir. 2006); see also Perez v. Unified Gov't

of Wyandotte County/Kansas City, Kan., 432 F.3d 1163, 1165 (10th Cir. 2005). Previously, a court was to apply a "two-step process" to determine whether "a defendant is entitled to qualified immunity." Graves, 450 F.3d at 1218 (noting that the two-step process entailed first, determining "whether Plaintiffs have asserted a violation of a constitutional right at all" and second, "whether that right was clearly established such that a reasonable person in the defendant's position would have known that his conduct violated that right") (further quotations omitted). See Saucier v. Katz, 533 U.S. 194, 201 (2001) (holding that the "threshold question" of whether "the officer's conduct violated a constitutional right . . . must be the initial inquiry"). However, the United States Supreme Court recently altered that analysis, holding that courts no longer must decide qualified immunity based upon the sequence required by Saucier. See Pearson v. Callahan, 129 S.Ct. 808, 812 (2009) (holding "that the Saucier procedure should not be regarded as an inflexible requirement and that [defendants may be] entitled to qualified immunity on the ground that it was not clearly established at the time of the search that their conduct was unconstitutional."). As the Supreme Court noted, "there will be cases in which a court will rather quickly and easily decide that there was no violation of clearly established law before turning to the more difficult question whether the relevant facts make out a constitutional question at all." Id. at 820. Thus, courts now "have the discretion to decide whether [the Saucier two-step sequence] is worthwhile in particular cases." Id. at 821. Although the Supreme Court held that lower courts are no longer required to address the qualified immunity questions in order, it recognized that it is "often beneficial" to do so. Id. at 818.

**C. Excessive use of force**

A "claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of [her] person ... [is] properly analyzed under the Fourth

Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard." Graham v. Connor, 490 U.S. 386, 388 (1989). As the Supreme Court explained in Graham, "[b]ecause [t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396 (internal citation and quotations omitted); see also Cordova v. Aragon, 569 F.3d 1183, 1188 (10th Cir. 2009); Weigel v. Broad, 544 F.3d 1143, 1151 (10th Cir. 2008). In determining reasonableness, a Court must ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397. Reasonableness "must be judged from the perspective of a reasonable officer on the scene," who is "often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." Id. at 396-397.

**D.  Defendant Gwin is entitled to qualified immunity**

The issue in this case is whether the actions of Defendant Gwin were objectively reasonable in light of the facts and circumstances confronting her, without regard to their underlying intent or motivation. See Graham, 490 U.S. at 397. The parties provide different versions of the events. Plaintiff claims that when he was discovered hiding in the box, he "calmly" raised his arms and announced his intent to surrender. See Dkt. # 1. He claims that after he attempted to surrender, he was attacked by the K-9 under Defendant Gwin's control. Id.  Plaintiff acknowledges that he remained seated in the box while being held by the K-9. Id.

6

Defendant Gwin gives a slightly different version of the events. She states that after her K-9 determined that Plaintiff was concealed in the wooden box, he lifted the lid of the box with his nose and placed a bite and hold grip on Plaintiff's arm pursuant to the tracking order she had given. See Dkt. # 20, Ex. 4. Defendant Gwin ordered Plaintiff to get down on the ground. Id. Plaintiff failed to obey the command and began "thrashing" around. Id. Once Plaintiff complied with her order to get to the ground, she gave the K-9 an order to let go of Plaintiff's arm. Id. Officers Jonathan Lartigue and Curtis Beard witnessed the apprehension of Plaintiff and provided affidavits supporting Officer Gwin's version of the events. See Dkt. # 19, Ex. 6. Neither Officer Lartigue nor Officer Beard heard Plaintiff surrender to Officer Gwin. Id.

Even if Plaintiff verbalized a surrender as he claims, the Court nonetheless finds that Defendant Gwin is entitled to entry of summary judgment. Defendant Gwin has provided uncontroverted evidence demonstrating that all three of the Graham factors weigh in favor of her entitlement to qualified immunity. First, Plaintiff was actively attempting to flee to avoid arrest. Second, he had committed a felony offense: he had fled from the scene of an accident. Third, he was attempting to hide from police to avoid arrest in the area of an apartment complex. Nothing in the record suggests that the police officers knew whether or not Plaintiff was armed. However, he was hiding in a box, thereby restricting the officer's ability to assess the threat to their safety. He acknowledges in his complaint that he remained seated in the box after the K-9 placed a bit and hold grip on his arm. See Dkt. # 1. Until Plaintiff got out of the box and to the ground, Officer Gwin could not be sure that Plaintiff was not a threat to her own safety, the safety of the other police officers, and the safety of individuals residing in nearby apartments. Thus, as long as Plaintiff remained seated in the box, it was not objectively unreasonable to use the K-9 unit to hold Plaintiff.

Plaintiff has failed to present any evidence controverting Defendant's averment that she acted reasonably in effecting Plaintiff's arrest. In response to the motion for summary judgment, Plaintiff asserts that because he was seated in the box, there was no "probable cause to sick a dog" on him. See Dkt. # 29. He also places emphasis on the fact that he was not charged with resisting arrest. Id. Plaintiff readily acknowledges, however, that he did flee the scene of an accident to avoid arrest. Upon consideration of the record, the Court finds that Plaintiff has failed to bring forth sufficient facts to establish that Defendant Gwin used excessive force to effect his arrest in violation of the Fourth Amendment. Because there was no constitutional violation, the Court need not address whether the constitutional right at issue was clearly established.

After viewing the evidence in the light most favorable to Plaintiff, the Court finds that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Defendant Gwin is entitled to judgment as a matter of law on her claim of qualified immunity.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1. Defendant Gwin is entitled to qualified immunity.

2. Defendant Gwin's motion for summary judgment (Dkt. # 18) is **granted**.

3. A separate judgment shall be entered in this matter.

DATED THIS 11th day of September, 2009.

TERENCE KERN
UNITED STATES DISTRICT JUDGE

8